**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TIFFANY O.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-CV-558
(DNH/PJE)

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Tiffany O.<br>Plaintiff pro se | |
| Social Security Administration<br>Office of the General Counsel<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>Attorneys for defendant | CANDACE CASEY BROWN, ESQ. |

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Tiffany O.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See* Dkt. No. 1. Plaintiff moves for the

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Commissioner's decision to be vacated and to be granted DIB and SSI benefits. *See* Dkt. No.14. The Commissioner moves for the decision to be affirmed. *See* Dkt. No. 20.[3] For the following reasons, it is recommended that plaintiff's cross-motion be denied, the Commissioner's cross-motion be granted, and the Commissioner's decision be affirmed.

## I. **Background**

On October 2, 2014, plaintiff filed a Title XVI application for SSI, alleging a disability onset date of July 12, 2014. *See* T. at 258-63[4] (*See* Dkt. No. 10-5).[5] On May 5, 2022, plaintiff filed Title II and Title XVIII applications for DIB, alleging a disability onset date of July 1, 2014. *See* T. at 266-72 (*See* Dkt. No. 10-5). On December 20, 2022, the Social Security Administration ("SSA") denied plaintiff's claims. *See id*. at 165-74 (*See* Dkt. No. 10-4). On February 2, 2023, plaintiff sought reconsideration, which the SSA denied on January 22, 2024. *See id.* at 182, 187-94 (*See* Dkt. No. 10-4). Plaintiff appealed and requested a hearing. *See id*. at 195 (*See* Dkt. No. 10-4). On July 12, 2024, a hearing was held before Administrative Law Judge ("ALJ") Michelle Marcus. *See id*. at 36-80 (*See* Dkt. No. 10-2). On September 3, 2024, the ALJ issued an unfavorable decision. *See id.* at 9-35 (*See* Dkt. No. 10-2). On October 22, 2024, the Appeals Council affirmed the ALJ's determination and the decision became final. *See id*. at 1-6 (Dkt. No. 10-2). Plaintiff commenced this action on May 5, 2025. *See* Dkt. No. 1.

## II. **Legal Standards**

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.
[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refer to the pagination generated by the Court's electronic filing and case management program located at the header of each page.
[5] Due to the voluminous nature and many parts of the administrative transcript, in addition to the record citation, the undersigned will include the docket cite for factual citations.

## A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3))[6]; *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id.* (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ reviewed plaintiff's DIB and SSI claims. As to plaintiff's DIB claim, the ALJ first determined that plaintiff "has

not engaged in substantial gainful activity since June 22, 2017, the alleged onset date."[7] T. at 15 (Dkt. No. 10-2). At step two, the ALJ determined that "[f]rom June 22, 2017[,] through the date last insured of June 30, 2019, [plaintiff] had the following severe impairments: migraine headaches, myofascial pain syndrome status post traumatic injury to the cervical and lumbar spine, and obesity." *Id*. (Dkt. No. 10-2). At step three, the ALJ found that "[f]rom June 22, 2017[,] through June 30, 2019, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 16 (Dkt. No. 10-2). Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[8] except that she could not tolerate concentrated exposure to bright lights (such as working outdoors in daytime sunlight) and could tolerate no exposure to loud noises (as might be experienced on a construction site)." *Id*. (Dkt. No. 10-2).

The ALJ then reviewed plaintiff's SSI claim and at step two determined that

> [f]rom March 3, 2022, the date the application for supplemental security income was filed, through the date of this decision, the claimant has had the following severe impairments: migraine headaches, myofascial pain syndrome status post traumatic injury to the cervical and lumbar spine,

---

[7] The undersigned notes that, during plaintiff's July 2024 hearing, the ALJ stated plaintiff's alleged disability onset date was July 14, 2014. *See* T. at 44 (*See* Dkt. No. 10-2).

[8] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

> obesity, carpal tunnel syndrome, posterior tibial tendon dysfunction, major depressive disorder, agoraphobia, and generalized anxiety disorder.

T. at 18 (Dkt. No. 10-2). At step three, the ALJ found that "[f]rom March 3, 2022, through the date of this decision, the claimant has not had an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 19 (Dkt. No. 10-2). Before reaching step four, the ALJ concluded that

> [f]rom March 3, 2022 through the date of this decision, the claimant has had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently balance, stoop, kneel, crouch, crawl, climb, and perform fine/gross manipulative activities in her bilateral hands, cannot tolerate concentrated exposure to bright lights (such as working outdoors in daytime sunlight), cannot tolerate any exposure to loud noises (as might be experienced on a construction site), is able to understand, remember, and carry out simple instructions, can attend to and timely complete simple tasks, and can adapt to simple changes in work routines and the work setting.

*Id*. at 19-20 (Dkt. No. 10-2).

At step four, the ALJ determined that plaintiff "has no past relevant work." T. at 24 (*See* Dkt. No. 10-2). Before reaching step five, the ALJ found that "[t]ransferability of job skills is not an issue because [plaintiff] does not have past relevant work." T. at 24 (*See* Dkt. No. 10-2). At step five, the ALJ determined that "considering [plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [plaintiff] could perform both during the period prior to the date last insured and since the Title XVI application filing date." *Id*. (*See* Dkt. No. 10-2). Ultimately, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from July 1, 2014, through the date of this decision." *Id*. at 25 (*See* Dkt. No. 10-2).

## IV. **Discussion**

A. **The Parties' Arguments**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ "did not consider all mental and physical impairments to do everyday daily tasks" in reaching her RFC determination. Dkt. No. 14 at 3. Plaintiff also appears to argue that the ALJ erred by denying her request to reopen her previously denied claims for DIB and SSI. *See id*. at 1-3.

The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be affirmed. *See generally* Dkt. No. 20. More specifically, the Commissioner argues that plaintiff is requesting the "Court to reweigh the evidence in her favor, which it cannot do." *Id*. at 9 (citing Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016)). The Commissioner contends that "the ALJ properly weighed the evidence—including treatment records, two consultative examinations, medical opinions, prior administrative medical findings, and Plaintiff's allegations—and substantial evidence supports the ALJ's RFC findings." *Id*.

Regarding plaintiff's request to reopen her previously denied claims, the Commissioner argues that "[w]here a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such a request under the doctrine of res judicata." Dkt. No. 20 at 20 (quoting *Columbel v. Comm'r of Soc. Sec.*, No. 6:16-CV-773, 2017 WL 3175599 (CFH), at *14 (N.D.N.Y. July 26, 2017) (quoting *Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011))). The Commissioner states that "[a]s a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." *Id*. (quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977))). "Although

there are exceptions to this rule for cases in which the prior adjudication has been constructively reopened or where a claimant was denied due process . . . Plaintiff has not alleged, and the evidence does not support, that either of these exceptions exist." *Id*. (quoting *Mark E. v. Kijakazi*, No. 8:20-CV-425, 2021 WL 4168590 (FJS), at *6 (N.D.N.Y. Sept. 14, 2021) (citing *Byam*, 336 F.3d at 180).

B. **RFC Determination**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she

i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

### 1. **Plaintiff's Claimed Limitations**

As discussed above, for both plaintiff's DIB and SSI claims, the ALJ concluded that plaintiff had the RFC to perform light work with several restrictions. *See* T. 16, 19-20 (Dkt. No. 10-2). Plaintiff argues that the ALJ erred in reaching these determinations because the ALJ "did not consider all mental and physical impairments to do every day daily tasks." Dkt. No. 14 at 3. Yet, plaintiff fails to identify any mental or physical impairment the ALJ did not consider and does not cite to any evidence in the record documenting such a mental or physical impairment. *See generally* Dkt. No. 14. Here, the ALJ considered

plaintiff's medical records, mental health treatment records, and the opinions of at least eight medical and psychological examiners and sources. *See* T. at 15-24.

The undersigned is sympathetic to plaintiff's contentions and her disagreement with the ALJ's determination, however, her "argument[] amount[s] to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do." *Joseph J. B.*, 2024 WL 4217371, at *1 (quoting *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024)) (internal quotation marks omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Tina W. v. Comm'r of Soc. Sec.*, No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'")).

Therefore, the undersigned concludes that the ALJ's decision is supported by substantial evidence and plaintiff's argument lacks merit because it is a conclusory allegation. *See Joseph J. B.*, 2024 WL 4217371, at *1 (first quoting *Halloran*, 362 F.3d at 31 (citing *Richardson*, 402 U.S. at 401); then quoting *Brault*, 683 F.3d at 448).

### C. **Request to Reopen Prior Denied Claims**

"Where a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such as request under the doctrine of *res judicata*." *Columbel*, 2017 WL 3175599, at *14 (quoting *Saxon*, 781 F. Supp. 2d at 99) (citing *Dunn v. Astrue*, No. 08-CV-0704 (MAT), 2010 WL 376390, at *3 (W.D.N.Y. Jan. 27,

2010)). "The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits." *Id.* (quoting *Saxon*, 781 F. Supp. 2d at 99) (citing *Byam*, 336 F.3d at 179-80)). "There are two circumstances in which the federal courts may review the Commissioner's decision not to reopen a disability application: (1) where the Commissioner has constructively reopened the case; and (2) 'where the claimant has been denied due process.'" *Id.* (quoting *Saxon*, 781 F. Supp. 2d at 99) (quoting *Byam*, 336 F.3d at 180)). "Although an ALJ can be deemed to have constructively reopened an application where he reviews the entire record and renders a decision on the merits, '[a] matter is not constructively reopened when the ALJ merely discusses prior proceedings and evidence to describe a claimant's background.'" *Id.* (quoting *Saxon*, 781 F. Supp. 2d at 99) (citing *Grant v. Shalala*, No. 93-CV-0124 (JTE/LGF), 1995 WL 322589, at *7 (W.D.N.Y. Mar. 13, 1995))).

1. **Analysis**

On June 21, 2017, ALJ Dale Black-Pennington denied plaintiff's DIB and SSI claims. *See* T. at 144-64 (*See* Dkt. No. 10-3); *see also* T. at 12 (*See* Dkt. No. 10-2). Plaintiff did not appeal the June 21, 2017, ALJ decision and it became final. *See generally* Dkt. No. 10; *see also* T. at 13 (*See* Dkt. No. 10-2). In the September 3, 2024, ALJ hearing decision on appeal, the ALJ explained:

> The claimant's representative indicated that she would like to amend the claimant's alleged onset date to the day after the date of the prior unfavorable decision but indicated that the claimant did not understand this. The claimant insisted that she was disabled since the date of a motor vehicle accident that occurred on July 1, 2014. However, when the claimant failed to successfully appeal the prior ALJ decision, it became the final ruling of the Social Security Administration as to the matter of the claimant's disability through the date of that decision. Therefore, the implied request

> for reopening is denied, and the remainder of this decision will address the issue of the claimant's disability since June 22, 2017, the day after the date of the prior unfavorable ALJ decision.

*Id*. at 13 (*See* Dkt. No. 10-2).

Affording plaintiff due solicitude and interpreting her arguments liberally, plaintiff argues that the ALJ erred by not reopening the July 21, 2017, ALJ decision denying DIB and SSA benefits because (1) she was unsure of her disability onset date, (2) the ALJ failed to apply or misapplied several statutes and regulations, and (3) the Appeals Council vacated the July 21, 2017, ALJ decision and remanded the matter "for the purpose of holding a de novo hearing." Dkt. No. 14 at 8; *see generally* Dkt. No. 14. The undersigned concludes that plaintiff's arguments lack merit because they are legally and factually incorrect.

In the September 3, 2024, ALJ hearing decision on appeal, the ALJ explicitly denied reopening the July 17, 2021, ALJ decision. *See* T. at 13 (*See* Dkt. No. 10-2). As such, the Court lacks subject matter jurisdiction to review that part of the September 3, 2024, ALJ decision and the first exception to the Court's lack of jurisdiction is inapplicable. *See Columbel*, 2017 WL 3175599, at *14 (quoting *Saxon*, 781 F. Supp. 2d at 99) (quoting *Byam*, 336 F.3d at 179)).

Similarly, plaintiff has not alleged that she has been denied due process. *See Columbel*, 2017 WL 3175599, at *14 (quoting *Saxon*, 781 F. Supp. 2d at 99) (quoting *Byam*, 336 F.3d at 179)). Rather, plaintiff's arguments that she could not remember her disability onset date and that the ALJ misapplied the law go to the merits of the September 3, 2024, ALJ decision and do not raise any due process claims. *See* Dkt. No. 14 at 1-3.

Additionally, plaintiff's assertion that the Appeals Council vacated the July 21, 2017, ALJ decision is only partially factually correct. *See* Dkt. No. 14 at 3, 8. On July 18, 2018, the Appeals Council vacated the July 21, 2017, ALJ decision and remanded the matter to hold a de novo hearing "because the recording of the hearing testimony and the claims file in this case could not be located and [Appeals] Council did not have a complete record to review." Dkt. No. 14 at 8. However, on August 10, 2018, the Appeals Council vacated their July 18, 2018, remand order and reinstated the July 21, 2017, ALJ decision because "[s]ubsequent to the [July 18, 2018,] remand, the missing records and claims file were located and associated with the record which is now complete." *Id*. at 6-8. Therefore, the undersigned concludes that the second exception to the Court's lack of jurisdiction is inapplicable because (1) the July 21, 2017, ALJ decision became final following the August 10, 2018, Appeals Council order; (2) plaintiff did not appeal the July 21, 2017, ALJ decision; and (3) plaintiff fails to raise any due process claim herein. *See generally* Dkt. No. 10; *see also* T. at 13 (*See* Dkt. No. 10-2); *Columbel*, 2017 WL 3175599, at *14 (quoting *Saxon*, 781 F. Supp. 2d at 99) (quoting *Byam*, 336 F.3d at 179)).

Accordingly, the undersigned recommends that plaintiff's cross-motion be denied and the Commissioner's cross-motion be granted.

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 14) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 20) be **GRANTED**, and the Commissioner's decision be affirmed; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.[9]

Dated: August 18, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

[9] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).